IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GABRIEL PARKER (#M-00416), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-04630 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| DAVID BROWN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's application for leave to proceed *in forma pauperis* [3] is granted. The Court orders the trust fund officer at Plaintiff's place of incarceration immediately to deduct $35.00 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee and to continue making monthly deductions in accordance with this order. The Court directs the Clerk of Court to (1) send a copy of this order to the trust fund officer of the facility having custody of Plaintiff and to the Court's Fiscal Department; (2) file Plaintiff's complaint [1]; (3) and issue summons for service of the complaint on nominal Defendant Chicago Police Superintendent David Brown by the U.S. Marshal. The Court appoints the U.S. Marshal to serve Defendant. To assist Plaintiff, the Court grants his motion for attorney representation [4]. Counsel will be appointed by separate order, and shall appear at the next status hearing. **Telephonic status hearing set for 11/17/2021 at 10:30 AM.** To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. In addition, Plaintiff's motions for file-stamped copies of documents filed [5], [7] are granted to the extent that the Clerk is directed to send Plaintiff a copy of his complaint [1] as a one-time courtesy; all other requested relief is denied.

## STATEMENT

Plaintiff Gabriel Parker, a prisoner at Dixon Correctional Center, brings this *pro se* civil rights action under 42 U.S.C. § 1983. Parker alleges that while in the custody of Chicago police officers, he repeatedly injured himself with a sharp metal object he found in a holding cell. Before the Court are Parker's application for leave to proceed *in forma pauperis*, his complaint for initial review, and his motion for attorney representation.

### I.

Parker has demonstrated that he cannot prepay the filing fee, and thus, his application for leave to proceed *in forma pauperis* is granted. Pursuant to 28 U.S.C. §§ 1915(b)(1) and (2), the Court orders: (1) Parker immediately to pay (and the facility having custody of him automatically to remit) $35.00 to the Clerk of Court for payment of the initial partial filing fee, and (2) Parker to pay (and the facility having custody of him automatically to remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The Court directs the trust fund officer to ensure that a copy of this order is mailed to each facility where Parker is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and should clearly identify Parker's name and the case number assigned to this case.

### II.

The Court next considers Parker's complaint. Under 28 U.S.C. § 1915A, the Court is required to screen prisoners' complaints and to dismiss any complaint, or any claims therein, if the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints by applying the same standard as for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Here, Parker alleges the following. On February 18, 2021, he was arrested by unnamed Chicago police officers and placed inside a police vehicle. (Compl. at 5, Dkt. No. 1.) Parker became "very agitated" because he is claustrophobic and had not taken his mental health medication. (*Id.*) He kicked the vehicle's doors and windows. (*Id.*)

Parker was taken to the 15th District police station, where he was placed into a holding cell and then spit at unnamed police officers. (*Id.*) Parker then kicked and shattered a window with his right foot. (*Id.*) Parker had no injuries at that time. (*Id.*) Unnamed Chicago police officers moved him to a second holding cell, "which they did not inspect." (*Id.*)

After the officers walked away, Parker found a sharp metal object in the cell and began to cut his arms "in a suicide attempt." (*Id.*) He hid the metal object inside his pocket, and unnamed officers never searched him. (*Id.*) At some point, however, an unnamed "turnkey" officer noticed Parker's cuts and alerted the "blue shirt" officers. (*Id.*) Police called an ambulance, which took Parker to Masonic Hospital, where he was treated by medical staff and given a shot of a psychotropic drug called "Helldog" (this may be a reference to the antipsychotic drug Haldol). (*Id.*)

From the hospital, Parker was transported to another police station at Belmont and Western avenues, where he was placed in a holding cell. (*Id.* at 5–6.) Parker remained agitated and flooded the holding cell. (*Id.* at 6.) Parker then retrieved the sharp metal object from his pocket and began cutting himself. (*Id.*) Unnamed police officers watched as he did this and called him "stupid." (*Id.*) Parker states that the officers did not try to take the metal object away from him. (*Id.*) But he was "rushed" to Masonic Hospital and then "transported a third time to Northwestern Hospital for the same behavior." (*Id.*) (It is unclear if Parker means that he was transported from Masonic Hospital to Northwestern, or if he means that there was a third cutting incident at a police station.)

Parker further alleges that "to cover up their culpability and propensity to allow these incidents to happen," officers falsified police statements concerning the object he used to cut himself and claimed that he cut himself with glass from the window he kicked out. (*Id.*) Parker states that each time he was transported to the hospital from February 18, 2021 through February 20, 2021, there were no reports of broken glass, nor were glass fragments taken from his skin. (*Id.*)

### III.

The Court understands Parker to be claiming that unidentified Chicago police officers failed to protect him from harming himself. When an arrestee who has not yet had a probable cause hearing brings a claim regarding his conditions of confinement, his claim is governed by the Fourth Amendment. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

It is unclear whether Parker is attempting to bring a claim concerning a failure to provide medical care or a more general hazardous conditions claim. Either way, an "objective reasonableness" standard applies, although courts have phrased the requirements for each type of claim differently. *Slabon v. Sanchez*, No. 15-cv-8965, 2021 WL 4146909, at *21 (N.D. Ill. Sept. 13, 2021). To determine whether a failure to respond to a medical need was objectively unreasonable, the Court considers four factors: (1) whether the officer had notice of the condition; (2) the seriousness of the condition; (3) the scope of the requested solution, and (4) police interests, including "administrative, penological, or investigatory concerns." *Slabon*, 2021 WL 4146909, at *22 (citing *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011)). Objective reasonableness in this context is measured by whether an officer having actual notice of the arrestee's medical condition acted reasonably. *Id.* (citing *Saucedo v. City of Chicago*, No. 11 C 5868, 2015 WL 3643417, at *4 (N.D. Ill. June 11, 2015) ((officers must receive some notice of suicide risk before their failure to intervene can be considered objectively unreasonable).

To state a claim, Parker must allege facts indicating that the defendants' conduct in regard to the circumstances of his detention were objectively unreasonable. *Slabon*, 2021 WL 4146909, at *22 (citing *Bradford v. City of Chicago*, No. 16 CV 1663, 2021 WL 1208958, at *7 (N.D. Ill. March 31, 2021)). In considering his claim, the Court must look at several factors, including the duration of confinement, the nature and seriousness of the alleged constitutional violation, and the police rationale for the alleged violation of rights. *Bradford*, 2021 WL 1208958, at *7. Regardless of the characterization of Parker's claim as either a medical or conditions claim, negligence, or even gross negligence, is not actionable under § 1983. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

Parker apparently faults officers for not inspecting the second holding cell at the 15th District police station before placing him in it, allowing him to find the metal object he used to cut himself. But this would amount to negligence at most. The complaint does not allege facts indicating that this set of officers knew Parker was at risk of harming himself and failed to respond reasonably. Parker's complaint shows that officers called for an ambulance after the first time he cut himself, and he was taken to the hospital and treated. This does not suggest an objectively unreasonable response.

Following treatment, however, Parker was taken to a different police station at Belmont and Western. It appears, although it is not altogether clear, that different officers took custody of him at this point. Parker suggests that these officers responded unreasonably when he began cutting himself again because they called him "stupid" and did not attempt to take the metal object away from him.

The Court observes that in the context of Eighth Amendment case law, courts have held that correctional officers have no duty to intervene physically in a prison assault if such intervention could cause serious injury. *See Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). Such concerns arguably are present in this case, as Parker describes himself as agitated and having just flooded his cell while holding a sharp metal object. But Parker's allegations nonetheless raise an inference that unnamed officers at Belmont and Western failed "intentionally failed to act" to protect him from harming himself, so further factual development is warranted at this time. *See Johnson v. Taylor,* No. 18 C 5263, 2020 WL 5891401, at *2 (N.D. Ill. Oct. 5, 2020) (finding an intentional failure to protect a pretrial detainee from ongoing danger stated a claim in a Fourteenth Amendment context, which applies a similar objective reasonableness standard). There also is the question of how, following an apparent suicide attempt, Parker was able to retain possession of a cutting object.

But to proceed with any claims against these officers, Parker must identify them and name them in an amended complaint so that they can be served. Parker may proceed against Chicago Police Superintendent David Brown as a nominal Defendant for this purpose. Once an attorney has entered an appearance on behalf of Defendant Brown, Parker should send defense counsel interrogatories (that is, a list of questions) eliciting information regarding the identity of officers he alleges failed to intervene when he cut himself. *See* Fed. R. Civ. P. 33.

To assist Parker with this process and any further proceedings in this case, the Court grants his request for attorney representation. Counsel will be assigned by separate order and appear at the next status hearing. Meanwhile, the Court directs the Clerk of Court to issue summons for service of the complaint on Defendant Superintendent Brown. The Court appoints the U.S. Marshals Service to serve Defendant. The Court directs the Marshal to make all reasonable efforts to serve Defendant. The Court authorizes the Marshal to send a request for waiver of service consistent with Federal Rule of Civil Procedure 4(d) before attempting personal service.

Date: October 15, 2021

_____
Andrea R. Wood
United States District Judge