**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIEL PARKER (M-00416), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 21-cv-04630 |
| | ) | |
| CITY OF CHICAGO; | ) | Judge Andrea R. Wood |
| CARLOS CANNON (Star # 12214); | ) | |
| JORGE GARCIA (Star # 14895) | ) | Designated Magistrate Judge: |
| JOHN SLOWINSKI (Star # 1951) | ) | Jeffrey Cole |
| JIMMY PIEDRASANTA (Star # 12884) | ) | |
| HARACE MINNIEFILED, JR.; | ) | |
| UNKNOWN OFFICER 1, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT OFFICER HARACE
MINNIEFILED, JR. TO PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES the Defendant, OFFICER HARACE MINNIEFILED, JR, by and through

his undersigned counsel and for his Answer and Affirmative Defenses to the Plaintiff's Amended

Complaint, states as follows:

**INTRODUCTION**

1.    Plaintiff Gabriel Parker Suffers from severe mental illness and was not taking his

psychotropic medications when he encountered Defendants. After being arrested by Defendants

Cannon and Garcia, Mr. Parker was allowed to access a sharp metal object repeatedly during his

three-day stay at the Chicago police station and was allowed to cut himself with the same metal

object on at least three different occasions.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a
belief as to the truth of the allegations regarding Plaintiff's mental illness or medications
and, therefore, neither admits nor denies the same and demands strict proof thereof.
Defendant denies the remaining allegations contained in Paragraph 1.**

2.      The Defendants each knew of the risk that Mr. Parker posed to himself, but none of them acted to either promptly get him the medical attention he required or to prevent Mr. Parker from harming himself.

**ANSWER:      Defendant denies the allegations of Paragraph 2.**

3.      As a result, Mr. Parker [sic] severe injuries to his arms and severe mental and physical distress.

**ANSWER:      Defendant denies the allegations of Paragraph 3.**

4.      The action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff Gabriel Parker's rights as secured by the United States Constitution.

**ANSWER:      Defendant admits that the Plaintiff has filed suit seeking money damages under 42 U.S.C § 1983 and the United States Constitution but denies any violation of the Plaintiff's statutory or constitutional rights.**

## JURISDICTION AND VENUE

5.      The Court has Jurisdiction over this action pursuant to 28 U.S.C. § 1391 and 1343(a), as Plaintiff's causes of action are brought under the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

**ANSWER:      Defendant admits this Court has jurisdiction over Plaintiff's claims, but denies any allegations of wrongdoing or other misconduct alleged herein.**

6.      Venue is proper in this Court Pursuant to 28 U.S.C. § 1391(b). On information and belief, one or more of the Defendants reside in the Northern District of Illinois and the events giving rise to the claims asserted in this lawsuit arose in this judicial district.

**ANSWER:      Defendant admits venue is proper.**

## PARTIES

7.      Gabriel Parker, the Plaintiff in this matter, is a 38-year-old man who has been incarcerated at the Dixon Correctional Center in Dixon, Illinois since April of 2021. Prior to that, Plaintiff was a resident of Chicago, Illinois

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 7 and. therefore, neither admits nor denies the same and demands strict proof thereof.**

8.      At all times relevant to their involvement in this case, Defendants Carlos Cannon (Star # 12214); Jorge Garcia (Star # 14895); Unknown Officer 1; Harace Minniefield, Jr.; John Slowinski (Star # 1951); and Jimmy Piedrasanta (Star # 12884) were Chicago police officers and were acting under color of law and within the scope of their employment as Chicago police officers. Collectively, these Defendants are referred to herein as "the individual Defendants."

**ANSWER:    Defendant admits that at all times relevant hereto he was employed by the City of Chicago Police Department and he was acting under color of law within the scope of his employment.  Defendant makes no answer to the remaining allegations of Paragraph 8 as they are not directed towards him.**

9.      Defendant City of Chicago is a municipal corporation that is or was the employer of the above-named Defendants. Each of the individually name Defendants acted as agents or employees of the City of Chicago. The City of Chicago is liable for all torts committed by the Defendants pursuant to the doctrine of *respondent superior.* Additionally, the City of Chicago is responsible for the policies and practices of the Chicago Police Department.

**ANSWER:    Defendant admits that all times relevant hereto he was employed by the City of Chicago, a municipal corporation. Answering further, Defendant denies that the remaining allegations contained in this paragraph are a complete and accurate statement of the law.**

## FACTUAL ALLEGATIONS

10.     On February 19, 2021, Chicago police officers responded to a call of a battery in

progress at a hotel located at 660 North State Street in Chicago, Illinois.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 10 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

11.     Responding officers, Defendant Carlos Cannon and Jorge Garcia, spoke to the

alleged victim, who we identify here by her initials "K.M." K.M. alleged that Mr. Parker had

attacked her.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 11 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

12.     On information and belief, K.M. further told Defendants Cannon and Garcia that

Mr. Parker had not been taking his psychiatric medications and needed psychiatric treatment at a

hospital.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 12 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

13.     Defendants Cannon and Garcia arrested Mr. Parker and transported him to the 18th

District police station at 1160 North Larrabee Avenue in Chicago, Illinois.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 13 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

14.     During transportation to the station, Mr. Parker was extremely agitated. He shouted

and kicked and punched the doors and windows of the police vehicle.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 14 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

15.     In the Arrest Processing Report, attested to by Defendant Cannon, it is noted that Mr. Parker was "presently taking prescribed medication" for "mental illness."

**ANSWER:     Defendant admits the allegations in Paragraph 15.**

16.     On information and belief, Mr. Parker arrived at the police station at approximately 1:35 p.m. on February 19, 2021. Upon arrival at the station, Mr. Parker remained in an extremely agitated state. He spit at police officers.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 16 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

17.     On information and belief, Defendants Cannon and Garcia placed Mr. Parker in an interview room or holding Cell at the police station. Mr. Parker kicked a glass window in that room, breaking it.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 17 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

18.     On information and belief, the window did not shatter or break out. Rather, the window had cracks in it, but otherwise remained intact.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 18 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

19.     On information and belief, Defendants Cannon and Garcia then moved Mr. Porker to a different holding cell in the police station.

**ANSWER:     Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 19 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

20.     In that room, Mr. Parker discovered a 3-4 inch long, sharp, metal object that was about the width of a cigarette lighter.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 20 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

      21.     Mr. Parker used that metal object to cut his arms.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 21 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

      22.     On information and belief, Defendant Unknown Officer 1 watched as Mr. Parker cut himself, called Mr. Parker "stupid," and requested assistance from other officers. Unknown Officer 1 did not attempt to take the sharp object away from Mr. Parker.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 22 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

      23.     Mr. Parker proceeded to place the metal object in one of his pockets.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 23 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

      24.     On or about February 20, 2021 at 8:05 a.m., Mr. Parker was transported to Illinois Masonic Medical Center on West Wellington Avenue in Chicago, Illinois.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 24 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

      25.     Upon arrival at the hospital, Mr. Parker presented with abrasion to his left forearm that were no longer actively bleeding

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 25 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

      26.     Mr. Parker further presented with a history of schizophrenia and bipolar affective disorder. Doctors noted that Mr. Parker's mental illness was "poorly controlled."

**ANSWER: Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 26 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

27.     At the hospital, Mr. Parker was angry and verbally aggressive.

**ANSWER: Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 27 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

28.     Mr. Parker was given the antipsychotic medication Geodon (ziprasidone) at the hospital.

**ANSWER: Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 28 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

29.     Hospital staff noted that Mr. Parker had received the antipsychotic medication Haldol the prior day at Northwestern Memorial Hospital.

**ANSWER: Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 29 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

30.     Prior to discharging Mr. Parker from the hospital, doctors informed Chicago police officers that Mr. Parker would require daily antipsychotic medication.

**ANSWER: Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 30 and, therefore, neither admits nor denies the same and demand's strict proof thereof.**

31.     On or about February 20, 2021 at 10:37 a.m., Mr. Parker was returned to a police station. On information and belief, that station was District 1 at 1718 South State Street in Chicago, Illinois, where Mr. Parker was placed in the "central male lockup" in a padded cell.

**ANSWER: Defendant admits the allegations in Paragraph 31.**

32.     At no point did any officer retrieve the sharp metal object from Mr. Parker's pocket.

**ANSWER:** **Defendant admits that he is unaware of any sharp metal object being found on Mr. Parker's person. Defendant makes no further response to the extent these allegations are directed towards other individuals.**

33. Mr. Parker remained extremely agitated. He flooded the padded cell with water.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 33 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

34. Mr. Parker proceeded to reopen the wounds on his arms using the sharp metal object he had previously found.

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 34 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

35. On information and belief, on or about February 20, 2021 at 11:45 a.m., Defendant Harace Minniefield, Jr. watched Mr. Parker cut himself and taunted him as he did so.

**ANSWER:** **Defendant denies the allegations of Paragraph 35.**

36. On information and belief, Defendant Minniefield made no effort to stop Mr. Parker or to retrieve the metal object from Mr. Parker, nor did he seek medical attention for Mr. Parker.

**ANSWER:** **Defendant denies the allegations of Paragraph 36.**

37. After harming himself a second time, Mr. Parker put the sharp metal object back in his pocket.

**ANSWER:** **Defendant denies the allegations of Paragraph 37.**

38. At approximately 8:00 p.m. on February 20, 2021, Mr. Parker told defendant John Slowinski that he intended to harm himself and that he was a "professional cutter."

**ANSWER:** **Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 38 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

39. At approximately 9:10 p.m. on February 20, 2021, Mr. Parker told Defendant Jimmy Piedrasanta that he intended to harm himself. Mr. Parker was thereafter transported to

8

Illinois Masonic Hospital, arriving at the hospital's emergency department at approximately 9:57

p.m.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 39 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

40.    The officers who transported Mr. Parker to the hospital told a nurse that Mr. Parker

had been cutting his forearms and reporting suicidal thoughts.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 40 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

41.    Mr. Parker told medical personnel that he had found an item at the police station

and had been using it to cut his wrists.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 41 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

42.    Medical personnel noted scab marks on both forearms and a cut extending from his

left wrist up his arm to the inside of his left elbow. There was no active bleeding.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 42 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

43.    Mr. Parker was extremely agitated in the hospital. He was given another injection

of antipsychotic medication.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 43 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

44.    Mr. Parker was discharged from the hospital at approximately 10:45 p.m. on

February 20, 2021 and transported back to the police station.

**ANSWER:   Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 44 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

45.     At no point did any officer retrieve the sharp metal object from Mr. Parker's pocket.

**ANSWER:   Defendant admits that he is unaware of any sharp metal object being found on Mr. Parker's person. Defendant makes no response to the extent these allegations are directed towards other individuals.**

46.     On or about February 21, 2021 at 10:54 a.m., a Judge of the Circuit Court of Cook County conducted a probable cause hearing in Mr. Parker's absence and concluded that there was probable cause to detain Mr. Parker.

**ANSWER:   Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 46 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

47.     At approximately 4:25 p.m. on February 21, 2021, Mr. Parker removed the bandages from his left arm and showed Defendant Slowinski wounds which Mr. Parker had reopened causing them to bleed.

**ANSWER:   Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 47 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

48.     Mr. Parker told Defendant Slowinski that he intended to continue opening the wounds until they were squirting blood. He told Defendant Slowinski he intended to kill himself.

**ANSWER:   Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 48 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

49.     Over an hour later, at approximately 5:35 p.m., Defendant Slowinski had Mr. Parker transported to Northwestern Memorial Hospital for a psychiatric evaluation and to treat the wounds to his arms.

**ANSWER:   Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 49 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

50.     At Northwestern Hospital, Mr. Parker remained extremely agitated. A police officer alleged that Mr. Parker spit in his face while at Northwestern.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 50 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

51.     On or about February 22, 2021, and following Mr. Parker's discharge from Northwestern Hospital, Mr. Parker was transported back to the police station and then to cook County Jail.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 51 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

52.     On information and belief, Mr. Parker's civilian clothes were confiscated from him shortly after his arrival at the jail. The sharp metal object remained in Mr. Parker's pants pocket.

**ANSWER:    Defendant denies the allegations contained in Paragraph 52.**

53.     On information and belief, a doctor evaluated Mr. Parker upon arrival at the jail and placed him on a crisis watch due to his mental state.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 53 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

54.     Upon information and belief, Mr. Parker was transferred to the custody of the Illinois Department of Correction on April 2, 2021 because his arrest in this matter constituted an alleged parole violation.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 54 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

55.     On information and belief, Mr. Parker's property- including his pants- were disposed of and/or donated upon his transfer to the Illinois Department of Corrections.

**ANSWER:    Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 55 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

## COUNT I
### 42 U.S.C. § 1983 – Denial of Medical Care (Fourth Amendment) Defendants Cannon, Garcia and City of Chicago

**ANSWER:    Defendant makes no answer to Count I as the allegations contained therein are not directed towards Defendant. To the extent that any allegations within Count I can be construed as being directed towards Defendant, those allegations are hereby denied.**

## COUNT II
### 42 U.S.C. § 1983 – Failure to Protect (Fourth Amendment) Defendants Minniefield, Slowinski, Piedrsanta, Unknown Officer 1, and City of Chicago

62. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:    Defendant restates his answers to each paragraph of this Complaint as his answer to this paragraph as though fully set forth herein.**

63.    As described in the preceding paragraphs, Defendants Minniefield, Slowinski, Piedrasanta, and Unknown Officer 1 were each on notice that Mr. Parker suffered from mental health issues, was not taking his medication, required hospitalization, had engaged in self-harm by cutting himself while in police custody, and posed a threat to himself.

**ANSWER:    Defendant denies the allegations contained in Paragraph 63.**

64.    Nevertheless, Defendants Minniefield, Slowinski, Piedrasanta, and Unknown Officer 1 failed to protect Mr. Parker from harming himself.

**ANSWER:    Defendant denies the allegations contained in Paragraph 64.**

65.    Defendant Minniefield, Slowinski, Piedrasanta, and Unknown Officer 1's failures to prevent Mr. Parker from harming himself were objectively unreasonable.

**ANSWER:    Defendant denies the allegations contained in Paragraph 65 and denies any allegation of wrongdoing or other misconduct alleged herein.**

66.     As a matter of policy and practice, Defendant City of Chicago encourages and facilitates this type of misconduct by failing to adequately train, supervise, control, and discipline its officers with respect to the foreseeable issues that arise related to mentally ill detainees.

**ANSWER:     Defendant denies the allegations contained in Paragraph 66 and denies any allegation of wrongdoing or other misconduct alleged herein.**

67.     As a result of Defendant Minniefield, Slowinski, Piedrasanta, Unknown Officer 1, and Chicago's unjustified and unconstitutional conduct, Mr. Parker experienced pain, suffering, emotional distress, and injury.

**ANSWER:     Defendant denies the allegations contained in Paragraph 63 and denies any allegation of wrongdoing or other misconduct alleged herein.**

## COUNT III
### 42 U.S.C. § 1983 – Failure to Protect (Fourth Amendment) Defendants Slowinski and City of Chicago

**ANSWER:     Defendant makes no answer to Count III as the allegations contained therein are not directed towards Defendant. To the extent that any allegations within Count III can be construed as being directed towards Defendant, those allegations are hereby denied.**

## COUNT IV
### 42 U.S.C. § 1983 – Failure to Protect (Fourth Amendment) Defendants Minniefield, Slowinski, and City of Chicago

75.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:     Defendant restates his answers to each paragraph of this Complaint as his answer to this paragraph as though fully set forth herein.**

76.     As described in the preceding paragraphs, Defendant Minniefield witnessed Mr. Parker cut himself and, instead of getting him medical attention, taunted him.

**ANSWER:      Defendant denies the allegations contained in Paragraph 76.**

77.     As also described in the preceding paragraphs, after Mr. Parker told Defendant Slowinski that he intended to continue harming himself until he was squirting blood, Defendant Slowinski waited over an hour to send Mr. Parker to the hospital for treatment.

**ANSWER:   Defendant lacks sufficient information or knowledge upon which to form a belief as to the truth of the allegations contained in Paragraph 77 and, therefore, neither admits nor denies the same and demands strict proof thereof.**

78.     These failures by Defendants Minniefield and Slowinski to obtain medical care for

Mr. Parker were objectively unreasonable.

**ANSWER:   Defendant denies the allegations contained in Paragraph 78 and denies any allegation of wrongdoing or other misconduct alleged herein.**

79.     As a matter of policy and practice, Defendant City of Chicago encourages and

facilitates this type of misconduct by failing to adequately train, supervise, control, and discipline

its officers with respect to the foreseeable issues that arise related to mentally ill detainees.

**ANSWER:   Defendant denies the allegations contained in Paragraph 79 and denies any allegation of wrongdoing or other misconduct alleged herein.**

80.     As a result of Defendant Minniefield, Slowinksi, and Chicago's unjustified and

unconstitutional conduct, Mr. Parker experienced pain, suffering, emotional distress, and injury.

**ANSWER:   Defendant denies the allegations contained in Paragraph 80 and denies any allegation of wrongdoing or other misconduct alleged herein.**

**COUNT V**
**42 U.S.C. § 1983 – Failure to Protect (Fourth and Fourteenth Amendments) All Defendants**

81.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:   Defendant restates his answers to each paragraph of this Complaint as his answer to this paragraph as though fully set forth herein.**

82.     As described in the preceding paragraphs, each individual Defendant had a

reasonable opportunity to prevent the violation of Mr. Parker's constitutional rights but failed to

do so.

**ANSWER:   Defendant denies the allegations contained in Paragraph 82 to the extent they are directed towards Defendant and denies any allegation of wrongdoing or other misconduct alleged herein.**

83.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:     Defendant denies the allegations contained in Paragraph 83 and denies any allegation of wrongdoing or other misconduct alleged herein.**

84.     The misconduct described in this Count was undertaken by the individual Defendants within the scope of their employment and under color of law such that their employer, the City of Chicago, is liable for their actions.

**ANSWER:     Defendant denies any misconduct as alleged herein.  Defendant admits that, at all times relevant, he was acting within the scope of his employment with the City of Chicago. Answering further, Defendant denies that the remaining allegations contained in this paragraph are a complete and accurate statement of the law.**

85.     The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of the City of Chicago, such that Defendant City of Chicago is also liable.

**ANSWER:     Defendant denies the allegations in Paragraph 85 and denies any allegation of wrongdoing or other misconduct alleged herein.**

86.     As a result of Defendant's unjustified and unconstitutional conduct, Mr. Parker experienced pain, suffering, emotional distress, and injury.

**ANSWER:     Defendant denies the allegations in Paragraph 86 and denies any allegation of wrongdoing or other misconduct alleged herein.**

## COUNT VI
### City of Chicago's Duty of Indemnification

**ANSWER:     Defendant makes no answer to Count VI as the allegations contained therein are not directed towards Defendant. To the extent that any allegations within Count VI can be construed as being directed towards Defendant, Defendant admits that, at all times relevant, he was acting within the scope of his employment with the City of Chicago and any remaining allegations are hereby denied.**

WHEREFORE, the Defendant Harace Minniefield, Jr. denies that the Plaintiff is entitled to judgement in any amount whatsoever and prays that the Plaintiff's action be dismissed with costs assessed to the Plaintiff.

## DEFENDANT HARACE MINNIEFIELD, JR.'S AFIRMATIVE DEFENSES

NOW COMES, Defendant, HARACE MINNIEFIELD, JR., by and through is attorneys, and for his Affirmative Defenses to Plaintiff's Amended Complaint, states as follows:

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff's Amended Complaint fails to state a claim against Harace Minniefield, Jr. upon which relief may be granted, *Huber v. Anderson*, 909 F.3d 2001, 2008 (7th Cir. 2018).

### SECOND AFFIRMATIVE DEFENSE

The Plaintiff's conduct was the sole proximate cause of his alleged injuries.

### THIRD AFFIRMATIVE DEFENSE

The Defendant Harace Minniefield, Jr. cannot be held liable for the Plaintiff's 42 U.S.C. § 1983 claims unless he individually caused or participated in the alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. See *Wolf-Lillie vs Sonquist, 699 F.2nd 864, 869 (7th Circuit 1983).*

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff had a duty to mitigate his damages, and any damages awarded to the Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

### FIFTH AFFIRMATIVE DEFENSE

At all times material to defense alleged in Plaintiff's amended complaint, Defendant was employed as a detention aide acting under color of law, and was a government official who was preforming discretionary functions. At all times material to the events alleged in Plaintiff's amended complaint, a reasonable detention aide objectively viewing the facts and circumstances confronted the Defendant could have believed his actions were to be lawful, in light of clearly established law and the information that the Defendant possessed, therefore is entitled to qualified immunity.

Dated: May 17, 2022

Respectfully Submitted,

*/s/: Francis P. Cuisinier*
Francis P. Cuisinier

Francis P. Cuisinier (ARDC # 0553328)
Edward D. Mizera (ARDC # 6313516)
Special Assistant Corporation Counsel
Ruberry, Stalmack & Garvey, LLC
10 S. LaSalle St., Suite 1800
Chicago, Illinois 60603
(312) 466-8050
pat.cuisinier@ruberry-law.com
Edward.mizera@ruberry-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2022, I electronically filed the foregoing **Answer and Affirmative Defenses of Defendant Officer Harace Minniefiled, Jr. To Plaintiff's Amended Complaint** with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/: Francis P. Cuisinier*
Francis P. Cuisinier